at our first argued case, number 22930, Scott v. Greene. Mr. Sansone. Good morning, your honors. I please the court. I'm Joel Sansone on behalf of the plaintiff, Kathy Scott. I think the issue in this case is very simple. Is there a remedy that Kathy Scott could have had through the administrative grievance process? We take the position that there is no such remedy because all three of the injuries that we are pursuing in this case are permanent injuries. And all medical attention that could have been given to the injuries has already been concluded and there's nothing further to treat. It's now simply a matter of her living with the damages that she suffered. So what's of interest to me is that after the Supreme Court- So what could she have gotten from the grievance process? So certainly she could get medical treatment from the grievance process, which sometimes even if injuries are permanent, there is some medical treatment that can make them better, right? She received medical treatment for these injuries, right? Well, I mean, she received dental treatment, but they pulled the wrong tooth, Judge. And you can't, like you can't put the toothpaste back in the tube, you can't put the tooth back in the head. So there's no way to fix that problem. I think the better one to focus on is the- But you sometimes can repair a rolling tooth, can't you? Well, I mean, you can replace- A false tooth or something, or- Well, I mean, you certainly could have an implant put in. I had this argument with my partners before I came here. You cannot replace what God gave you with something just as good. I have two hips replaced, and they're not just as good. I understand, so you're saying that she can't get from the grievance process something just as good, but you can get something that helps, right? So yeah, I understand that your hip replacement is not exactly the same as the original hip. Maybe it's better. No, it's not. It's at least something, right? It is a remedy, it's not- It is not a remedy for the- I think the issue there is the measure of damages. You might say that if they were willing- Is it possible through the grievance process, if in fact she's entitled to damages because they did something wrong, could she not receive some kind of compensation or some kind of an accommodation to compensate her for something, even if they can't fix it? Well, I think that's a question for the jury. I think the better issue to focus on- No, but now we're asking whether she exhausted administrative remedies, right? And you're saying she couldn't have gotten anything from the grievance process, but I'm saying, well, she could have gotten something, just not exactly what she wants, and maybe she even could have gotten some kind of compensation if in fact she was entitled to. Is that not possible through the grievance process? I concede it's possible that she might have got something that was not as good. I think the better one to focus on is the left eye, for which there is no correction. She has- But you're arguing that it's not as good before we even know what they would have given her. I mean, wouldn't the appropriate step, and what's contemplated here by requiring exhaustion, is that the Bureau gets to consider how it addresses a possible injury, and then if you think it's inadequate or insufficient in some way, then you may be able to resort to the courts. But to not use the remedy at all is problematic, I think. What am I missing? Nothing, with respect to the left eye, there is nothing that could have been done. She lost vision in it, it's gonna be a permanent loss. They can't fix that with any future treatment of any kind, and she wasn't asking for any future treatment because all the doctors said, there's nothing more that we can do. Same with the ankle injury, you can't make it, she had three months in a wheelchair, you can't take that back, and a jury should be able to decide what the value of that is. But with respect to the loss of her vision, there is no remedy, nor has the lower court suggested a remedy, nor has my learned counsel suggested any remedy. I think Ross has to stand for the proposition- But at the time of your lawsuit, if there's no remedy, what remedy are you seeking in the lawsuit? Money damages. And it's not possible to get any kind of money, or any kind of- I'm sorry, Judge? And it wouldn't be possible to receive any kind of money or anything resembling that through the grievance process? Not that I'm aware of, Judge, I don't know that they're giving monetary compensation through the grievance process, and it's not called for in the grievance process, so I think the answer is no. I think Ross has to stand for the proposition that where there is a permanent injury caused by the lack of care of prison officials, you don't have to go through the administrative process because it's pointless. But can you point us to a case that has so held that where the injury is permanent and cannot be remedied, that there is no need to go through the grievance process? I think all of the cases that we cited, Rucker, Greenhaven, Taylor, Williams, all of those cases stand for the proposition that where there is no remedy, you don't have to pursue the- I understand that's the general principle, but have they found it in cases where the injury is one that is permanent and cannot be cured? I don't find a case directly on point. Right, I didn't think so, so I wanted to make sure I hadn't overlooked something. Right, but I think that the law is clear here, and we have to give meaning to Ross and to the White case, which, by the way, the lower court seems to ignore. The lower court seemed to ignore all of the holdings from this circuit and went to pre-Ross holdings from the district courts mainly in order to find that this was a violation, and I just don't see that there's any opportunity for my client to do anything about these permanent injuries. Is there any, I realize you're out of lights on, and I apologize, but I want to let you finish. Is there any difficulty in the fact that she seeks injunctive relief from your comparison of those cases? We amended the complaint to withdraw our request for injunctive relief. Okay, I'm sorry, thank you. Thank you. Thank you very much, Mr. Sassone. We'll turn to the appellee, Mr. Brown. Thank you. May it please the court, Your Honor, Bill Brown, Assistant United States Attorney for the Defendant Appellees, also seated with me at Council Table are two of our law student interns, Aaron Katz and Felipe Villallon, both from the University of Connecticut School of Law. I'd like to address the money damages question first, because that came up a couple of times. If, in fact, Ms. Scott had followed the mandatory administrative revenue program within the BOP, and if in that process she had indicated she was seeking money damages, it would not have been available within the ARP, but she would have been advised the process she had to follow was the administrative tort claim process, which would have led to the relief that she really seeks, which was an opportunity to file a federal tort claim in the district court. So while Ms. Scott argues here and argued in the lower court that there was nothing to be gained by following the process, really it would have resulted in the relief that she ultimately seeks, which was a passport to the district court. When she broke her ankle, she wanted somebody to look at it. So why does she have to go through a grievance procedure when it takes the correctional facility three weeks before she finally sees the doctor? Well, Your Honor, the whole point is- I mean, seriously. And we see a lot of this, long delays with regard to medical procedures. And so every time some inmate has a medical issue that's identified, it's not contrived, it's identified, and then there's supposed to be a follow-up and there is no follow-up, much to the dismay of the inmate because the inmate's medical condition worsens. They're supposed to submit a grievance that'll take months to resolve. Doesn't that sound meaningless to you? No, Your Honor, because the whole point of the administrative remedy program is, as Her Honor stated, to put the Bureau of Prisons on notice so that the medical team can address these concerns. Understand there may be- Well, indeed, that's what she did with regard to her ankle. Nothing happened, did it? Well, no, the record is full of notations where there was follow-up medical care on her ankle, her teeth, both sides. So she submitted an informal resolution for the ankle and then she was seen by a doctor and had an X-ray and an orthopedist and got surgery, right? That's correct. And that was in response to an informal resolution. So she didn't have to complete the AARP process to get that treatment. That's correct, Your Honor, and she began the process- And I suppose what you're saying is if, in fact, the prison ignored the request and delayed treatment for an extended period of time, then she could have pursued a remedy through the administrative tort process by saying, you exacerbated my condition by delaying treatment and therefore I'm entitled not only to treatment, but some money damages. That's correct, Your Honor, and- So you're being precise about it by saying that the AARP process doesn't allow for damages, but there is an administrative process that would allow for damages. That's correct, and she would have had to have exhausted that process to get into the district court with a federal tort claim. But in the end, the district court was correct that futility is not an exception under the mandatory exhaustion requirement under the PLA in the Ross case. And the district court was also correct that a prisoner's decision not to follow that process does not render the process unavailable as a matter of law in this context. And we see that because Ms. Scott, as you pointed out in our brief, filed a number of administrative remedies during the relevant period of time on other unrelated issues. So the process was- So let me ask you this, and maybe this is an academic exercise, let's say you didn't have an administrative tort process, let's say all you had was the AARP process, and it didn't allow for money damages, and that's what she's seeking. Would she then still have to go through the AARP process before filing this suit? Yes, Your Honor, because as Her Honor pointed out before, the purpose is to put the BOP on notice to give them the first opportunity to resolve things at the informal stage, perhaps render the care that was needed, make the prison a better place before you get an opportunity to get into the district court. So even if there was not a remedy available to her through the process, the curia thing would still be required? That's correct, Your Honor. Okay. Lest there are any other questions, we rest on our brief. Thank you very much. Thank you very much, Mr. Brown. We'll turn back to Mr. Sansone on... Oh, I don't have any reserved time for rebuttal. I'm sorry, I did not- Did you reserve time for rebuttal? No, no. Okay, thank you very much. Both parties will argue the case is submitted. Safe journey home, John. Thank you very much.